U.S.C.A. – 7th Circuit
RECEIVED
JAN 06 2023   2

CASE # 22-2815 AND 22-2881
IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ALAN BRAID, MD                                                          APPELLANT

V.            District Court # _____[1]

OSCAR STILLEY                                                     CROSS APPELLANT

V.

OSCAR STILLEY; FELIPE GOMEZ                                         APPELLEES

### APPELLEE/CROSS APPELLANT OSCAR STILLEY'S
### VERIFIED NOTICE OF CHANGE OF ADDRESS

Comes now Stilley Oscar Stilley (Stilley) and his verified notice of change of address states:

1. This may well be the longest notice of change of address in the history of American jurisprudence. Fundamentally, Stilley requests that his electronic filing permissions be maintained, but that efforts be made to serve pleadings and papers on Stilley at the jail at which he is now confined. If Stilley regains his liberty he will promptly notify the Court electronically. The clerk is invited to skip to the last page. The assigned judges may also find this approach expedient, at least at the present time.

2. Stilley on 11-21-2022 was remanded to the custody of the US Marshals, on the basis of a petition for summons or warrant for revocation in Northern District of Oklahoma (OKND) US District Court, US v. Stilley, 4:09-cr-43. The Marshal Service placed Stilley in David L. Moss Criminal Justice Center (DLMCJC), also known as the Tulsa County Jail. Stilley remains in jail at on a sentence of 3 months, up through and including 2-20-2023.

3. Legal calls at DLMCC cost $1 per minute and are difficult to get. DLMCJC engages in a veritable litany of violations of (American Correctional Association (ACA) Standards and Expected Practices (EP) for jails.

---

[1]   Stilley disremembers the district court case number.

1

4. DLMCJC as part of its war on 1st Amendment peaceful petition, due process, etc., refuses to sell postage stamps or extra ounce stamps, at any price. They only sell stamped envelopes and $8.95 flat rate envelopes, in defiance of salutary standards ACA standards and expected practices. Delivery of incoming mail is routinely delayed, often for weeks. Incoming mail is routinely delivered long after the 48 hours for ordinary mail, and 72 hours for packages (law books, docket and docket items, transcripts, etc.).

5. Stilley on 12-20-2022 got privileged mail, from the OKND US District Court and the 10th Circuit, mail pieces stamped December 8, December 9, (from the 10th Circuit clerk) December 12, and December 17. The mailroom supervisor, who has not identified himself, claims that he delivers all mail the day of receipt.

6. This jail received a letter from Stilley's mother on or about December 7, a tracked package December 8, and a tracked package December 9. The December 8 package was 3 law books, returned without explanation or due process notice and entitlement to object. The package for which tracking shows delivery the 9th was the exhaustive docket and a set of recent filings in Stilley's criminal case. This set of Ibico bound court filings was returned to sender, likewise without notice and due process right to object. Interference with the mail is commonplace.

7. Thus, Stilley must be creative just to get his pleadings to the respective clerks.

8. DLMCJC enforces arbitrary rules and schedules that serve no legitimate purpose. For example, inmates can be in the locked cell or out of the locked cell, but permission to go in and out of the cell is routinely denied, even for urgent needs. This is true even though some housing units, such as J13 and J15, don't even have doors on the cells, and thus don't permit this particular assault on due process and peaceful petition, etc.

9. The law library has only 2 computers for about 1,500 to 2,000 inmates, with Microsoft Word, and 2 computers with a pathetically "dumbed down" version

of Fastcase. Files are kept only on 2 thumb drives, without backup in case of failure. One is plainly failing and has numerous corrupted files and folders, but we still can't get another one, even by offer of donation.

10. Virtually nobody in this jail has their docket and docket items in possession. They have the barest understanding of the pleadings and processes that will determine their liberty and their fate.

11. The meager resources on the tablets and kiosks in the housing units are rendered virtually worthless for many reasons. One, they are so short stocked that inmates, especially the indigent, have very little access. They are "owned" by groups of inmates, to the point of writing their names on them and guarding them. The interface is terrible, vastly less efficient than a keyboard. There is a 15 minute time limit per session, which can go to 1 hour for a payment of 99 cents. Nothing can be copied and pasted anywhere. Many of the most important resources, such as local rules for various courts, simply aren't there.

12. Reasons that this order of immediate remand to harsh custody is unlawful include but are not limited to the following.

### 1. DENIAL OF 6th AMENDMENT COUNSEL

13. Stilley inquired of opposing counsel, who stated that the government didn't oppose an initial appearance under Federal Rule of Criminal Procedure (FRCrP) 32.1. The District Court immediately denied Stilley's motion for initial appearance, without waiting for a response or ordering an expedited response.

14. Stilley then filed a motion to reinstate his standby counsel at trial, in the same capacity as before. This motion was denied.

15. Stilley requested 30 days to seek his own legal counsel, or at least 15 days. The District Court denied this request, and conducted the revocation hearing with Stilley proceeding pro se.

3

16. Stilley has consistently made it clear that he claims the rights set forth in FRCrP 32.1, and other authorities, and will not tolerate the appointment of any counsel, in any capacity, without notice and opportunity to be heard and to state his decisions in open court.

## 2. LACK OF JURISDICTION

### A. Lack of Authorization to Preside in the Western District of Oklahoma

17. Stilley was convicted in the Northern District of Oklahoma, (OKND) with Stephen P. Friot presiding.
18. Stephen P. Friot is a duly commissioned judge of the Western District of Oklahoma, (OKWD) but not the OKND.
19. The various chief judges of the 10th Circuit have cross designated all the judges of the Western, Eastern, and Northern Districts of Oklahoma, each to all the other districts, save for recent cross designations that exclude the one judge who has a lawful commission from Congress, to all three districts.
20. These cross designations claim as authority 28 USC 292(b).
21. These cross designations have been done every year for at least the last 14 years in a row.
22. These cross designations are not "temporary" within the meaning of the statute, nor are they in the public interest or otherwise compliant with the rule.

### B. Revocation Proceedings Commenced in District Lacking Jurisdiction, and Thus Constituting Nullities

23. Judge Friot transferred Stilley's district court case from the OKND to the OKWD preparatory to the filing of a petition for warrant or summons to revoke Stilley's supervised release, and send Stilley to jail or prison.
24. Stilley wrote a letter to various government officials which included, amongst other things, a contention that the OKWD had no jurisdiction over Stilley.
25. The petition for warrant or summons alleged no act or omission in the OKWD, and no facts or conclusions showing that the claims of the petition to revoke had any meaningful connection to the OKWD.
26. Stilley was at the time asking for 30 days to petition the court to modify and/or clarify various special conditions of supervised release.
27. On information and belief Judge Friot couldn't get any of the personnel of the US Probation Office of the OKND to file a petition to revoke, while Stilley was working feverishly on a motion to modify and/or clarify the conditions of supervised release.
28. Judge Friot had US Probation personnel in the OKWD willing to speedily file a petition to revoke.
29. Judge Friot had his chambers in Oklahoma City, and thus proceedings were more convenient for him in that city. However, convenience of a judge is not a legitimate basis for venue or jurisdiction.
30. Judge Friot entered an order stating setting forth a schedule for briefing the issue of jurisdiction and venue in the OKWD.
31. Said order stated that if Judge Friot was not persuaded as to venue and jurisdiction in the OKWD, he would vacate the order of transfer from OKND to OKWD.
32. Judge Friot's order on the issue stated that he wasn't "sufficiently satisfied" as to jurisdiction and venue in OKWD.
33. Rather than vacate the order of transfer as promised, Judge Friot transferred the petition to revoke from OKWD to OKND.
34. Just over one week later, over the strenuous objections of Stilley, Judge Friot held a "revocation and sentencing" hearing in OKND, on the basis of

5

accusations filed by OKWD personnel, under the new criminal case opened in the OKWD.

### C. No Final Order

35. Judge Friot sentenced Stilley to 3 months incarceration on counts 1 and 3 of the petition to revoke supervised release.
36. Judge Friot reserved judgment on counts 2 and 4.
37. On information and belief, Stilley is likely to serve all 3 months of his sentence in Tulsa County Jail, aka David L. Moss Criminal Justice Center (DLMCJC).
38. On information and belief, Judge Friot reserved the other 2 counts as a "sword of Damocles" to 1) create a jurisdictional quagmire, and 2) deter Stilley from seeking due process, and 3) reserve a means of punishing Stilley for pursuing remedies with which Judge Friot disagrees.

## 3. THE UNDERLYING CONVICTION OF STILLEY MAKES A COMPLETE MOCKERY OF THE RIGHT TO GRAND JURY INDICTMENT

39. Stilley was informed pretrial, not less than 6 times, that his co-defendant Lindsey Kent Springer had earned money, which Stilley paid to Lindsey Springer out of his Interest on Lawyers Trust Account (IOLTA) account, pursuant to the express directives of his clients.
40. After the trial, the government claimed that Stilley and Lindsey Springer had stolen the money.
41. Earning money is the diametric opposite of stealing it.
42. The government admitted in writing that the jury would have acquitted save for the conclusion that the money was stolen.

43. This amounts to an admission that Stilley cannot possibly be guilty of the charges of the indictment.
44. The Department of Justice, by and through its subsidiary the DOJ-FBOP, prevented Stilley from getting his docket and docket items, so as to be able to prosecute the one direct appeal to which he is by law entitled.
45. Stilley's papers show that he has been remanded to DOJ-FBOP custody, although it also appears that he is in *de facto* custody of the US Marshal Service.
46. It appears that the DOJ once again plans to snuff out Stilley's legal right to prosecute the one direct appeal to which Stilley is entitled.
47. The tactics used by the DOJ and its subsidiaries will likewise snuff out Stilley's due process and peaceful petition rights in this 7th Circuit appellate case.
48. Due to the extreme limitations imposed on Stilley, he can't effectively prosecute his one direct appeal of the 3 month sentence, or his appeal in this case.

## 4. OTHER REASONS THE INCARCERATION OF STILLEY IS LAWLESSNESS

49. Stilley actually resides in the Western District of Arkansas, (ARWD) and has resided there for the last 3 decades, save the more than 10 years of federal custody on 2 counts of tax evasion and one count of conspiracy which relied upon the same set of facts.
50. US Probation officials with whom Stilley has spoken have admitted that the special conditions are impossible of performance and should be modified.
51. For example, Stilley is forbidden to use computer encryption, yet was forced to sign up for an encrypted message service just to get the government's exhibits for the revocation and sentencing hearing.

52. Stilley sought 30 days to seek modification/clarification, or such lesser time as OKND US Probation (as the probation office having legal jurisdiction) deemed appropriate. This request was made to ARWD US Probation officials acting on behalf of US Probation for OKND, which had jurisdiction and the right to make decisions, seek or refuse to seek revocation, etc.
53. ARWD US Probation refused to agree to any time to petition the court, and furthermore stated that even if Stilley filed immediately, a petition to revoke would be filed.
54. Stilley called and emailed US Probation in OKND, but didn't get his calls or emails returned until much later, when the case was returned from OKWD to OKND.
55. ARWD US Probation demanded full access to Stilley's computer and computer files, through various special conditions which, taken together, would allow the government to do a warrantless search on all of Stilley's computer files and information.
56. Stilley works for a nonprofit corporation known as REVAMP (Remember Every Victim and Missing Person in US, Inc.). REVAMP assists persons adversely affected by unsolved murders and missing persons cases. REVAMP obtains computer files from governmental investigative and/or prosecutorial authorities, on condition that such records and information be kept strictly confidential.
57. REVAMP would be forced to fire Stilley if he breached or threatened to breach the confidentiality of these records.
58. Stilley is a former Arkansas licensed attorney (Bar # 91096) who practiced law for some 19 years prior to coming to prison.
59. Stilley's special conditions of supervised release would compel him to give the government access to his attorney-client privileged documents, emails, etc.
60. At the hearing 11-21-2022, Judge Friot offered to "clean the slate" and dismiss the revocation petition if Stilley would only comply going forward. Judge Friot gave the parties a 30 minute break to seek agreement.

61. After the break, Jeff Gallant[2] stated the parties agreement in open court, on behalf of the government. Mr. Gallant explained that privileged files and information would be maintained at REVAMP's Fort Smith, Arkansas office, and the surveillance would be done on other electronic devices used by Stilley.
62. Judge Friot abruptly stated that the revocation hearing would have to proceed nevertheless.
63. Stilley sought the evidence against him as well as the identity of his accuser(s). This too was denied, probably because the real accuser was either Judge Friot or the US Probation officers in OKWD who signed the petition and amended petition to revoke supervised release (or, more likely, both).
64. Jeff Gallant actually accused Stilley of being his own accuser, in open court on the record. Stilley restrained his tongue, rather than ask how Stilley could be expected to cross examine himself without waiving his 5th Amendment right not to be a witness against himself.
65. Judge Friot made no findings of flight risk or merits on appeal. Stilley barely succeeded in getting Judge Friot to specifically rule on Stilley's motion for stay pending appeal.
66. Judge Friot denied the motion for less restrictive custody, despite the fact that Stilley had just completed almost 2 years of home confinement, with an exemplary record.
67. Judge Friot denied 7 motions, without requiring the government to respond to any of them. Now Stilley is denied access to these documents, because DLMCJC won't deliver the mail.
68. Stilley cited US Supreme Court Rule 36 and argued it, in writing and orally. Rule 36 bars the custodians of a habeas petitioner from changing the custody

---

[2] Lead counsel for the government, along with Vani Singhal and Charles O'Reilly (Mr. O'Reilly did not appear personally).


of the petitioner to his detriment, absent proper request. No proper request was made in Stilley's case.

WHEREFORE, Stilley respectfully requests that future notices and papers be served electronically and also be mailed the address below, until further notice.

**VERIFICATION**

Stilley by his signature below pursuant to 28 USC 1746 declares under penalty of perjury that the facts stated in the foregoing paragraphs are true and correct, based on Stilley's knowledge and belief.

By: _(signed)_              12-23-2022
Oscar Stilley, Inmate # 1189798      Date
David L. Moss Correctional Center
300 North Denver
Tulsa, OK 74103
479.384.2303
oscarstilley@gmail.com

### PRISON MAILBOX RULE CERTIFICATE OF SERVICE

Stilley by his signature above pursuant to 28 USC 1746 declares under penalty of perjury that on the date stated above he placed a copy of this pleading in the prison outgoing mail receptacle, with sufficient US postage attached, addressed to the Clerk of the Court for filing and service via CM/ECF. Stilley requests that some interested party send a copy to Wolfgang de Mino, since he appears not to have yet entered appearance in this case.