No. 22–2815

# In the United States Court of Appeals for the Seventh Circuit

| | | |
|---|---|---|
| ALAN BRAID, M.D., | ) | On Appeal from the United |
| | ) | States District Court for the |
| *Plaintiff-Appellant*, v. | ) | Northern District of Illinois |
| | ) | |
| OSCAR A. STILLEY, et al | ) | District Court Case |
| | ) | No. 21–CV–5283 |
| *Appellees* | ) | |
| | ) | |
| | ) | The Hon. Judge |
| | ) | Jorge L. Alonso, Presiding |
| | ) | |
| | ) | |

## RESPONSE BRIEF OF APPELLEE OSCAR STILLEY

Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: <u>No. 22–2815</u>

Short Caption: <u>Alan Braid v. Oscar Stilley et  al</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

> [ X ]   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**
> **I no longer have a fax number.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>  Not a licensed attorney -- proceeding pro se.</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
<u>  Stilley has been pro se at all times in this litigation.</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    <u>  N/A</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    <u>  N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    <u>  N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    <u>  N/A</u>

Attorney's Signature: <u>/s/ Oscar Stilley</u>     Date: <u>  06-15-2024</u>

Attorney's Printed Name: <u>  Oscar Stilley</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ✔ ]   No [ ]

Address: <u>  10600 North Highway 59, Cedarville, AR 72932</u>

Phone Number: <u>479.384.2303</u>     Fax Number: <u>  None</u>

E-Mail Address: <u>  oscarstilley@gmail.com</u>

rev. 12/19 AK

# TABLE OF CONTENTS

## Contents

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ............................................................. 1

SUMMARY OF ARGUMENT ...................................................................... 2

APPELLEE'S ARGUMENT ......................................................................... 5

I.   The District Court erred in concluding that Texas courts can
fairly and conclusively resolve Dr. Braid's federal issues. ..................... 5

   A.   An examination of all likely prospects demonstrates the
practical futility of seeking resolution in Texas courts. ..................... 5

      1.   SB8 was designed to evade decisive confrontation. ................... 7

      2.   SB8 inflicts the most horrifying cruelty on those it pretends
to protect. ........................................................................................ 17

      3.   SB8 is a cram-down of hypocritical religion. ............................ 19

   B.   An asymmetric attack on natural rights may require an
asymmetric response. ............................................................................ 27

      1.   Due process is powerful when it is universally respected, a
pious platitude otherwise. ............................................................... 29

      2.   The Texas political class has procured a due process
protester. ........................................................................................... 37

      3.   The shortcomings of SB8 do not justify throwing the baby out
with the bathwater ............................................................................ 39

   CONCLUSION ........................................................................................... 43

CERTIFICATE OF SERVICE ................................................................... 44

CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS ... 44

# TABLE OF AUTHORITIES

## Cases

*Armstrong v. Manzo*, 380 U. S. 545 (1965) ...................................................... 15

*FDA v. Alliance for Hippocratic Medicine*, 602 U. S. ____ (2024) .................. 22

*FTC v. Superior Court Trial Lawyers Assn.,* 493 US 411 (1990) (Brennan, J., concurring in part and dissenting in part) .................................................... 43

*Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977).. 26

*Marbury v. Madison*, 5 U.S. 137 (1803) .............................................................. 9

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ............................................... 11

*Ruffin v. Commonwealth*, 62 Va. 790 (1871) ................................................... 26

*Van Stean v. Tex. Right to Life*, No. D-1-GN-21-004179 (Tex. Dist. Ct. Dec. 9, 2021) .................................................................................................... 27, 29

## Statutes

28 USC 2255 ..................................................................................................... 32

## Rules

Tex. R. Civ. P. 202 .............................................................................................. 7

## Other Authorities

Alshami A, Douedi S, Guida M, Ajam F, Desai D, Zales V, Calderon DM. *Unusual Longevity of Edwards Syndrome: A Case Report.* Genes (Basel). 2020 Dec 7;11(12):1466. doi: 10.3390/genes11121466. PMID: 33297534; PMCID: PMC7762407. ................................................................... 28

Bisset, Victoria, *Infant death rate spiked in Texas after restrictive abortion law, study finds*, Washington Post, June 25, 2024 .................................... 25

Bowling, Joshua. *An inmate went on a hunger strike. So the jail shut off his tap.* Searchlight New Mexico, June 19, 2024. https://searchlightnm.org/an-inmate-went-on-a-hunger-strike-so-the-jail-shut-off-his-tap/ ........................................................................ 39

Deuteronomy 12:32 ........................................................................ 7

Deuteronomy 16:20 ........................................................................ 7

Deuteronomy 4:2 ........................................................................ 7

Deuteronomy 7:12-15 ........................................................................ 23

Deuteronomy 7:13 ........................................................................ 12

El-Bawab, Nadine, *Texas Supreme Court temporarily blocks ruling that allowed woman emergency abortion*, ABC News, December 10, 2023, https://abcnews.go.com/US/hearing-underway-texas-woman-court-emergency-abortion/story?id=105455849 ........................................................................ 28

Exodus 21:22-25 ........................................................................ 20

Gemmill A, Margerison CE, Stuart EA, Bell SO. *Infant Deaths After Texas' 2021 Ban on Abortion in Early Pregnancy. JAMA Pediatr.* Published online June 24, 2024. doi:10.1001/jamapediatrics.2024.0885 ........................................................................ 25

Genesis 15:2 ........................................................................ 21

Genesis 2:7 ........................................................................ 20

Goodman, J. David *Lawsuits are filed against a Texas doctor who said he performed an abortion*, New York Times, 9-21-2021. ........................................................................ 8

Jeremiah 8:8 ........................................................................ 19

John 10:10 ........................................................................ 19

John 11:38-44 ........................................................................ 21

Klibanoff, Eleanor, *Anti-abortion crusader's deposition requests generate fear, but no findings*, The Texas Tribune, May 10, 2024. https://www.texastribune.org/2024/05/10/texas-courts-abortion-jonathan-mitchell/ ........................................................................ 8

Leviticus 19:15 ........................................................................ 7

Leviticus 25:43, 46, and 53...........................................................27

Underhill, Stefan R. & Powell, Grace E. *Expedient Imprisonment: How Federal Supervised Release Sentences Violate the Constitution*, Vol. 108, Virginia Law Review Online, pg. 108, November 2022, https://virginialawreview.org/articles/expedient-imprisonment-how-federal-supervised-release-sentences-violate-the-constitution/ ..............................31

# JURISDICTIONAL STATEMENT

Appellee Oscar Stilley (Stilley) has read the Jurisdictional Statement in the Appellant's brief filed by Dr. Alan Braid (Dr. Braid). Pursuant to Circuit Rule 28(b), Stilley concludes as a technical matter that Dr. Braid's Jurisdictional Statement is complete and correct.

## SUMMARY OF ARGUMENT

Esau famously sold his birthright for a bowl of lentil stew. Texas Senate Bill 8 (SB8) presented Appellee Stilley a chance to sell his birthright – due process, peaceful petition, equal protection, etc., – not for an *actual* bowl of stew, but for the right to *chase* a bowl of stew. Thus far nobody has gotten their bowl of stew.

Texas SB8 was designed to enable and normalize harassment of abortion providers, those who assist or finance abortions, etc. Neither the drafters of the bill, nor the state legislators who voted for the bill, nor the governor who signed it, thought it was *mostly* constitutional. They crafted SB8 to allow random plaintiffs a line of attack through court processes, without ever giving defendants an opportunity to get a decisive ruling. SB8 is a systematic attack on the right to due process, peaceful petition, etc.

The point of SB8 is to allow "any person" to use legal uncertainty and court proceedings to force their adversaries into submission, extort money, etc. Even if some SB8 plaintiffs either don't understand the game, or won't play the game, the legislation is structured to allow others to win by a war of attrition.

This case presents an anomalous situation, in which both Appellant Dr. Alan Braid and Appellee Stilley agree that reversal and remand is

appropriate.  Appellant Braid and Appellee Stilley partially disagree about the tenor of a proper district court ruling.  Stilley contends that *some* applications of SB8 should survive constitutional scrutiny. Appellant Braid says there are none. Dr. Braid has not contended that Stilley's claims in support of partial constitutionality are frivolous or malicious, only that they lack legal merit.

Dr. Braid's remaining claims are based on federal constitutional due process, equal protection, and peaceful petition. Stilley is not aware of any non-frivolous argument against Dr. Braid's core arguments on the merits. Stilley is not aware of any non-frivolous argument that SB8 has constitutional validity, beyond that which Stilley argues. Stilley bases these conclusions on extensive communications with Wolfgang P. Hirczy de Mino, Jonathan Mitchell, his co-Appellee Felipe N. Gomez, and others.

The table of contents of Dr. Braid's brief contains only one main heading. Dr. Braid argues that the District Court relied upon an inapplicable legal doctrine. He argues that the District Court had a legal duty to exercise the subject-matter jurisdiction admittedly vested in that court. Dr. Braid has ably argued the position that at least some of his claims gave him *entitlement* to a decision on the merits, as opposed to discretionary review.

Stilley concedes that the district court below should have "said what the law is." Indeed, Stilley sought declaratory judgment of his own, which

3

was denied along with Dr. Braid's claims. However, a ruling on Dr. Braid's claims will give Stilley the right to be heard, and the right to a ruling upon his arguments. Stilley has the highest confidence that the District Court will fairly consider Stilley's arguments and render a well-reasoned decision, in the event of a remand.

Stilley in furtherance of his own argument shows why Dr. Braid has no realistic chance of getting a binding decision on his claims and arguments, in Texas courts.

Appellees have reached an understanding whereby Stilley will take the middle ground, arguing that Dr. Braid's position is partly erroneous. Felipe Gomez will thereupon supply the arguments in favor of sustaining the judgment below, in its entirety. In this way all the competing arguments will be adequately represented to this honorable Court without running afoul of the rule against unnecessarily duplicative briefing.

## APPELLEE'S ARGUMENT

**I.     The District Court erred in concluding that Texas courts can fairly and conclusively resolve Dr. Braid's federal issues.**

### A.     An examination of all likely prospects demonstrates the practical futility of seeking resolution in Texas courts.

Appellant filed a concise opening brief.  Amicus counsel filed a concise amicus brief, setting forth additional points and authorities in a scholarly way.

Appellee Stilley agrees with Appellant generally, on most points, and specifically with respect to their request that the cause be remanded for a decision on the merits of Appellant's claims.  Stilley respectfully disagrees with Appellant as to tenor of the judgment that should be entered by the District Court. Specifically, Appellee Stilley claims that SB8 is mostly but not completely unconstitutional and seeks a ruling on his arguments. Appellant contends that SB8 is completely unconstitutional.

If this Court chooses to accept this statement at face value, and close this brief without reading further, Stilley would most certainly understand. Stilley's conclusion is verbatim the same as Dr. Braid's. Alternatively, the panel could ask a law clerk to read the remainder and write a memo concerning whether the judges on the panel need to read the remainder of this brief.

As a practicing lawyer, Stilley once heard a judge tell a litigant "I'm about to rule in your favor, if you don't talk me out of it." Perish the thought that Stilley might talk this august tribunal out of an order that he believes to be the legally correct result.

Stilley has a few legal points and authorities that he wishes to bring to the attention of the court, in support of his effort to see his own challenge to Dr. Braid's absolutist position heard and decided. Perhaps more importantly, he seeks to put a human face on this litigation.

Why? The proponents of SB8 – those who drafted it, voted for it, and signed it into law – have arrogated to themselves the white hat and the mantle of righteousness. Come not near unto us, for we are holier than thou!

None of this is true. SB8 amounts to institutionalized hypocrisy, perversity, and *sin*. SB8 constitutes a shameless, systematic assault on the rule of law. SB8's proponents relied on the religious ideology of the ***HOUSE OF WORMWOOD*** as justification for their lawlessness. In fact, the concept of due process was plainly laid out in the Torah[1] of Yahweh[2] our Elohim. They have

---

[1]        "Torah" (plural torot) can mean teaching, guidance, or direction, as well as "law."

[2]        English Standard Version (ESV). However, "the Lord your God" is replaced with "Yahweh your Elohim." Yahweh is the personal name of the creator. "Elohim" is the transliteration of a Hebrew word that means "mighty ones." The term "God" is recent invention, coming into use about 1,500 years ago. Plus, bibles that use the term "God" don't reliably show when the word is plural (Elohim) or singular (El, Elah, or Eloah).

rebelled against the Torah, choosing instead to rely upon the imaginations of their own hearts.

In promulgating SB8, its promoters have turned the teachings of Torah upside down. Consider the following examples:

### Deuteronomy 16:20
Justice, and only justice, you shall follow, that you may live and inherit the land that the Yahweh your Elohim is giving you.

### Leviticus 19:15
"You shall do no injustice in court. You shall not be partial to the poor or defer to the great, but in righteousness shall you judge your neighbor.

What is *sin*? Violating the Torah. Not once but twice Elohim said, in essence, 1) these are my rules, 2) keep all of them, 3) don't make up any new ones. Deut. 4:2; Deut. 12:32.

### 1. SB8 was designed to evade decisive confrontation.

The promoters of SB8 have turned justice on its head. That was the whole point. As the Appellant correctly notes, SB8 was structured to evade pre-enforcement review. They did this structuring because they well knew and believed that SB8 is flagrantly and pervasively unconstitutional.

Why else would Jonathan Mitchell, former Texas solicitor general who devised SB8, file a *pre-suit petition* under Texas Rules of Civil Procedure (Tex. R. Civ. P.) 202? Why not just file the lawsuit, serve it, do depositions and other discovery, and litigate the case to its normal conclusion? Does he

think his client Shannon D. Thomason is going to fall over dead, and he won't be able to find one Texan out of some 21 million, to prop up with a stick and carry on his litigation?

Mitchell has [filed at least 9 pre-petition suits](#),[3] to get deposition testimony. Out of the nine, one has been approved by a judge, resulting in an appeal.

Mitchell knows full well that SB8 is a constitutional abomination.  By his acts and omissions he confesses his beliefs and the thoughts of his heart. He bobs and weaves, staying out of range of a decision on the merits. He knows direct and forthright litigation will not end well for him.

That's also why Texas Right to Life despises **BIG BAD OSCAR**. [4] Consider the following from [a New York Times article](#),[5] concerning the civil complaints of Stilley and Felipe Gomez:

> "Neither of these lawsuits are valid attempts to save innocent human lives," said John Seago, legislative director for Texas Right to Life, the state's largest anti-abortion group, which lobbied for the new [abortion law](#). "Both cases are self-serving legal stunts, **abusing**

---

[3] Klibanoff, Eleanor, *Anti-abortion crusader's deposition requests generate fear, but no findings*, *The Texas Tribune*, May 10, 2024. https://www.texastribune.org/2024/05/10/texas-courts-abortion-jonathan-mitchell/

[4] Referring to Appellee Stilley, but with a different connotation. Stilley sometimes ships books and papers under the fictitious name "Big Bad Oscar's Publishing House," but always with his own personal name, to avoid any confusion.

[5] Goodman, J. David *Lawsuits are filed against a Texas doctor who said he performed an abortion*, New York Times, 9-21-2021. https://www.nytimes.com/2021/09/20/us/texas-abortion-lawsuit-alan-braid.html

**the cause of action** created in the Texas Heartbeat Act for their own purposes."

He added that he and others at Texas Right to Life "believe Braid published his Op-Ed intending to attract **imprudent lawsuits**." (Emphases added)

Beg pardon whilst ***BIG BAD OSCAR*** asks a rhetorical question. How in the [expletive deleted] does one "abuse" a cause of action that was conceived for no purpose *other than* abuse? Surely the pot calls the kettle black.

This language requires a bit of interpretation. "Abusing the cause of action" means filing a forthright lawsuit that might plausibly give the defendant a straight shot at a decision on the merits. "Imprudent lawsuit" is any lawsuit that doesn't take advantage of the myriad special features of SB8, to bleed the defendant white while cheating the defendant out of a ruling on the merits.

This ideology is utterly inconsistent with limited, constitutional government. This ideology is contrary to the foundational principles of our republic. Consider *Marbury v. Madison*, 5 U.S. 137, 177-78 (1803), the seminal case concerning the role of the courts in saying what is and what isn't law:

> *It is emphatically the province and duty of the judicial department to* **say what the law is.** Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each.
> So if a law be in opposition to the constitution; if both the law and the constitution apply to a particular case, so that the court must either

decide that case conformably to the law, disregarding the constitution; or conformably to the constitution, disregarding the law; *the court must determine which of these conflicting rules governs the case.* **This is of the very essence of judicial duty**.

       If, then, the courts are to regard the constitution, and the constitution is superior to any ordinary act of the legislature, the constitution, and not such ordinary act, must govern the case to which they both apply.

(Emphases added)

Upon what did the Founders base their claims of the rights of man? The second paragraph of the Declaration of Independence informs us that they ascribed the power to grant rights to the **Creator**.

We hold these truths to be self-evident, that all men are created equal, that they are endowed **by their Creator** with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure **these rights**, Governments are instituted among Men, deriving their just powers from the consent of the governed…

(Emphases added)

Stilley filed a counterclaim complaint, ([Dkt. 23](#)) which in essence asked for opposite of what Dr. Braid requested. Stilley asked the District Court to "say what the law is."  Stilley got locked up on the theory of a violation of supervised release, and his cross-appeal fell by the wayside. [7th Cir. 22-2815 Dkt. 29](#).

It would be unseemly if not unlawful for Stilley to change his tune on appeal and oppose Dr. Braid's attempt to get a decision on the merits.  Such an approach would offend the spirit if not the letter of the doctrine of judicial estoppel.  The concept of judicial estoppel was explained in *New Hampshire v.*

*Maine*, 532 U.S. 742, 749-750 (2001). Judicial estoppel prevents litigants from relying upon clearly contradictory positions in different phases of a case, based on the exigencies of the case. The purpose of the doctrine is to protect the integrity of the courts. It is designed to prevent litigants from "playing fast and loose with the courts."

If anyone should complain about Stilley's position, they should remember that it has been consistent. From the beginning of Braid's complaint in District Court, Stilley has sought a ruling on the merits, which he will honor. Stilley respectfully disagrees with Dr. Braid as to the precise tenor of the ruling that should be entered at district court. As to the request for a ruling on the merits, there is no daylight between **BIG BAD OSCAR** and Dr. Braid.

Specifically, Stilley contends that the constitutionally valid applications of SB8 are quite limited, whereas Dr. Braid argues that SB8 is completely unconstitutional. When Stilley sues someone to get a money judgment and give the defendant a satisfaction of judgment on favorable terms, Stilley believes this constitutes a constitutional "application" of SB8. At least, Stilley believes that this is a non-frivolous argument in partial defense of SB8.

Some might complain that this looks and smells like extortion. With this Stilley heartily agrees, but please allow an explanation.

About 100 years ago, religionists just like the creators of SB8 decided to

turn one of the blessings of Yahweh our Elohim straight on its head. **BIG BAD OSCAR** likes to lump them all together and call them the **CHURCH OF CHARLIE BROWN**.

Elohim in [Deuteronomy 7:13](), promised to bless amongst other things the *wine* of his people, because they keep his rules and do them. Expert religionists converted this blessing of Elohim into a felony carrying up to five years of incarceration, and a fine of up to approximately 480 ounces of gold coin, today worth over $1 million. We call it the "Volstead Act."

The US [federal debt in 1916]() was about $3.6 billion. Prohibition [cost the US Treasury $11 billion in federal tax revenue, and cost $300 million to enforce](). Putting two and two together, the economic fallout of Prohibition cost enough money to **pay off the pre-world war national debt three times over**. The most lasting consequence of Prohibition? Pushing the federal government and many states to rely heavily on income taxes from that time forth.

The social effects? Prohibition brought blood in the streets, corrupt public servants and extortion rackets galore. One hundred years later, we haven't quit. We still spend massive amounts of money fighting the intoxicant *du jour*. First it was wine, then weed, then opium, then heroin, then cocaine, then crack, then methamphetamine, now fentanyl. What's in our future? [Nitazenes](), which can be as much as 40 times as potent as

fentanyl, or even more.

Horrible results, such as 100,000 overdose deaths a year, overcrowded prisons, enormous tax costs, etc., are assigned as reasons to "double down," not to examine the underlying premise. We cannot logically deny that attacking intoxicants by brute force routinely gives rise to stronger and more pernicious intoxicants, but we can't seem to understand that the key to the defense of legitimate social interests is in the Torah of Yahweh our Elohim. The ***[HOUSE OF WORMWOOD]*** has struck again.

Why pray tell should we expect anything different this time? SB8 offers "safe harbor" only after the *satisfaction* of a judgment of not less than $10,000. Why shouldn't Stilley offer such safe harbor, if such a scheme is truly lawful?

If this means that the sole constitutional application of SB8 is embarrassing legal mischief, then so be it. Whatever tenor of a ruling may be, Stilley will respect it. Maybe Stilley is wrong and Braid is right. Maybe SB8 has no redeeming features whatsoever. Maybe it is totally unconstitutional.

The drafters of SB8 fenced out the normal defender of state laws, the elected Attorney General. They had to do that. Otherwise, they all knew that SB8 would be slapped down in a skinny minute.

Stilley assumed that the promoters of SB8 would find a lawyer willing

to make their arguments in this litigation.  Stilley was wrong.

Stilley made every reasonable effort to find a lawyer willing to vigorously defend the constitutionality of SB8.[6]  Barring that, he sought a lawyer willing to vigorously oppose a ruling on the merits.  In all these efforts Stilley has been singularly unsuccessful.  To the extent that Stilley's interests and arguments aren't sufficiently divergent from those of Dr. Braid, the backers of SB8 have no one to blame but themselves. Plus, who's going to argue that point? The Appellee camp scarcely has what one might call a "deep bench."

Let's do a quick rundown of the players, on the plaintiff side of SB8:

1) Oscar Amos Stilley, whose original Texas state court suit against Dr. Braid has been stayed pending the conclusion of this litigation; and,

2) Felipe Nery Gomez, who plans to helpfully file a response brief seeking to sustain the District Court's decision altogether; and,

3) Wolfgang P. Hirczy de Mino, the one true believer amongst the appellees in this case, who couldn't be troubled to enter appearance in this appeal; and,

4) Brainstormer in chief Jonathan Mitchell, who despite much effort appears not to have won a single $10,000 bounty on behalf of any of

---

[6]      It can scarcely be denied that Stilley is well known to the promoters of SB8.

the clients of his distinguished law practice.

Strange indeed for a law that purports to give bounty hunters an easy $10,000 from everyone who performed an abortion or aided and assisted. So why should we bother with a declaratory judgment in US District Court?

The world knows that SB8 is a manifest fraud, but that doesn't mean it isn't a *material threat*. That doesn't mean Dr. Braid (and Oscar Stilley as well) isn't entitled to due process. The fundamental essence of due process is the right to be heard in a reasonable time and a reasonable manner. *Armstrong v. Manzo*, 380 U. S. 545, 552 (1965).

Texas has now made abortion a felony, punishable by up to life in prison. What keeps Mitchell from laying low, staying far enough away from a courthouse to keep from getting any more dings on his brainchild, and using the threat of criminal prosecution to extort SB8 payments by agreement? Sure, that type of behavior violates all kinds of legal and ethical norms. So does SB8 generally.

Now consider the players. De Mino is a true believer, so why would he ever give Dr. Braid a straight shot at a decision on the merits of SB8? De Mino has repeatedly expressed puzzlement about why Stilley isn't a better team player.[7] It's hard to cite from the record, with respect to a litigant who

---

[7] Stilley has repeatedly offered de Mino assistance to enter appearance and present his theories in a legally proper way, at district court as well as at this

15

won't enter and file pleadings in the normal way, but that's very much how he thinks.

Mr. Gomez non-suited his Texas lawsuit, and then at least tried to get a dismissal with prejudice, to get out of the litigation. For this and many other reasons, he's not a source of a definitive ruling in Texas courts.

Jonathan Mitchell is the primary mastermind behind SB8. He knows how it works. He designed SB8 to evade any decisive confrontation. Should we expect him to forget all that and meekly offer Dr. Braid the very opportunity Mitchell sought to avoid?

Assume for a moment that Dr. Braid is relegated to seeking relief as a defendant in Texas state courts. Stilley can defeat him with the simplest of legal ploys. Let Dr. Braid waste resources until he's close to a decision, then dismiss without prejudice. It's called a "non-suit" and it is the legal right of a litigant.

It doesn't matter if a dozen litigants sue Dr. Braid in Texas state courts. If they're all team players, they can put the defendant and the various courts to a lot of work – and then non-suit immediately prior to an adverse decision. By the terms of SB8, the state court judge has no discretion

---

circuit court. Stilley has exerted every reasonable effort to ensure that the defendants/appellees are able to properly present any non-frivolous defense.

to award costs and attorney's fees to the defendant.[8]

It is hard to visualize a legal system that works, in which justice is *completely* dependent on the altruistic impulses of adverse parties. The opponent gets an absolute veto – but is subject to an unspoken request to exercise that veto judiciously.

### 2. SB8 inflicts the most horrifying cruelty on those it pretends to protect.

Lots of ideas look good in the abstract. Who could possibly be "opposed to life?" Consider this true story. Let's put a human face on Texas SB8.

Let's call the main character "Janie Doe." She can't lift her arms. She can't feed herself, toilet herself, or move herself. Someone else gets her up and puts her to bed. Someone else helps her with elimination of bodily wastes.

She gets fed with a nasogastric tube. She doesn't have the ability to eat and enjoy food like you and me. She can't talk. Nobody knows how much she understands. She wasn't expected to live 10 years. She's over 30 years old.

It probably costs half a million dollars a year to keep her alive. She's probably cost the taxpayers at least $15 million. Her parents are forced to covet the wealth of other people, in violation of the 10th commandment, to

---

[8] Whether such provisions actually prevent a judge from awarding costs and fees for frivolous litigation is a question for another day.

keep their child alive. They don't earn anywhere near enough money to pay for this one daughter. Allowing her to die, even by negligence, could easily bring criminal charges and long prison sentences.

Stilley has seen her, in the flesh.  It gives Stilley PTSD just to think about her.

Why?  Because Stilley's had a nasogastric tube down his nose, not once or twice but 8 times.  That doesn't count the times Stilley was threatened with it and chose to drink Ensure rather than endure the trauma of force feeding.

Stilley was sentenced to 15 years in federal prison.  He was cheated out of 1st Amendment peaceful petition and due process and didn't take it well. Stilley has spent more than 400 days in SHU (Special Housing Unit, or jail for the prison) on hunger strike.  Most of that time was directly or indirectly related to Stilley's failed efforts to vindicate his rights to due process and peaceful petition – the very things that Dr. Braid justly seeks in this litigation.

That hurts.  Stilley never liked force feedings and wanted the tube out ASAP.  Fairly quickly Stilley learned to ask the medical personnel to lubricate the whole tube.  A big gob of lube on the end doesn't do the trick. Stilley was nice to the medical personnel, and they generally showed kindness in return.  Stilley made his position clear.  You're not my enemy,

you haven't hurt me, and I'm not opposed to you.  Do your job, but please don't hurt me unnecessarily. They understood.[9]

Janie can't reason with her caregivers.  She can't talk.  Stilley's seen the tube left hanging from her nose, apparently as a matter of convenience. Stilley can't stand the thought of living his whole life that way.  Given a choice between 15 years in federal prison, and Janie's life, it's an easy question.  Stilley would take the prison in a heartbeat.   Someday that's over. Prison is a little slice of death, day by day, but Stilley had an "out date." Stilley could look forward to the day when his prison ordeal would end.

Janie's nightmare ends when she shuffles her way off this mortal coil. She has no rational hope of anything better.  She has no hope of "life more abundantly"[10] – at least not during this life.

### 3.     SB8 is a cram-down of hypocritical religion.

Why?  Because the false pen of the scribes,[11] and the traditions of the

---

[9]     But for one incident, in which medical personnel, unduly influenced by Operations, rammed the tube down without water to take it down.  The tube hit Stilley's throat latch, went sideways, and went out Stilley's mouth, while Stilley frantically pleaded for water.  Medical personnel realized the problem when Stilley briefly clamped down with his teeth.  They pulled the tube back and sent it down Stilley's throat correctly.  The video of this abuse, of course, was destroyed, by no one in particular, and without malice.  So we're told, at least.

[10]     John 10:10  ESV

[11]     Jeremiah 8:8.  ESV  "LORD" in small capitals is the means whereby the scribes cover up the Tetragrammaton, Yod-Hey-Vav-Hey, יהוה, the personal name of the Creator.

elders, convinced the parents to engage in totally irrational behavior.

Consider what the Holy Writ has to say on the subject. Genesis 2:7 says:

> 7 And יהוה Elohim formed the man out of dust from the ground and breathed into his nostrils breath of lives. And the man became a living being.
> (The Scriptures, by Institute for Scripture Research (ISR))

In the scriptures that set forth *lex talionis*, the law of retaliation, we find at [Exodus 21:22-25](#) the following:

> 22 "When men strive together and hit a pregnant woman, so that her children come out, but there is no harm, the one who hit her shall surely be fined, as the woman's husband shall impose on him, and he shall pay as the judges determine. 23 But if there is harm, then you shall pay life for life, 24 eye for eye, tooth for tooth, hand for hand, foot for foot, 25 burn for burn, wound for wound, stripe for stripe.
> (ESV)

The translators don't quite agree about what the words translated as "children come out" mean. That can be determined by reviewing [Exodus 21:22 in many translations.](#) This is quite possibly an example of something called *constructive ambiguity*. Since the author was the Creator of the universe, we can safely assume he had his reasons for every word and every letter that he used.

What isn't ambiguous is who has ***standing*** to prosecute the claim. It is *the husband* of the pregnant woman.

Elohim was made flesh. He dwelt amongst us. He demonstrated beyond reasonable doubt his mastery of the breath of life in human beings.

After 3 days of death, Yahshua the Messiah restored Eliezer[12] back to life. Without physically touching him, he gave him the *breath of life*.[13]

All or virtually all the religionists who crafted SB8 will tell you that Janie Doe will walk on streets of gold, with a perfect body and a perfect soul, after she dies.  Better yet, they'll confidently say that it doesn't matter whether she is a zygote, an embryo, a fetus, or a 30-year-old when she dies. She'll have a brand new, perfect body – *after she dies*.

Janie's siblings are amazing, highly productive, healthy citizens. They're competitors, operating at the top of their respective worlds. Janie suffers every day, not because of brute force but because of misguided *persuasion*. Thirty years ago, the parents had a right to an abortion. They just didn't exercise that right.

What happens if Husband draws the conclusion that he can have a healthy body for his baby *in this life*, by procuring an abortion?  What happens if he concludes that his Elohim will put that *original equipment soul* into a healthy fetus, if only he tries again? What if he asks the professional religionists where, specifically, the Holy Writ condemns his rational action, motivated by the best of intentions and without the slightest malice?

---

[12]     Misleadingly referred to as "Lazarus." See Genesis 15:2. The false pen of the scribes strikes again.
[13]     John 11:38-44.

The **HOUSE OF WORMWOOD** has no good answer – save bluster, deceit, and condemnation. That's when it becomes Stilley's job to turn the laws of man and Elohim on their head.  Stilley has been deputized to attack the man for his humane decision.  Not directly, of course – that's bad public relations. **BIG BAD OSCAR** is expected to attack in a sneaky, indirect way. Like a cockroach, **BIG BAD OSCAR** must not allow himself to be squashed flat. He must live to aggravate another day.

Stilley has standing by the legislative fiat of SB8. The husband is a *lawful target*. Busybodies like Stilley call the shots. Such "standing" is laughable in any court that gets a straight shot at an SB8 plaintiff.[14] The US Supreme Court on June 13, 2024 issued a 9-0 swat-down of the officious intermeddling of certain doctors ideologically opposed to the use of abortifacient drugs. *FDA v. Alliance for Hippocratic Medicine*, 602 U. S. ____ (2024). The US Supreme Court informed the ideological doctors that they **don't have a dog in that fight**.

So here's what the expert religionists believe and peddle to us.  Yahweh our Elohim won't be mad because we celebrate Mithra's birthday on December 25, despite countless warnings against idolatry, such as Acts 15:20. He won't be angry that people profane the Sabbath prescribed by the 4th

---

[14]    Stilley does not by this statement concede the lack of standing as to the narrow applications of SB8 that he defends.

[Commandment](#), while observing the 1st day of the week, Mithra's [day of the invincible sun](#). He won't be angry because people eschew his Passover in favor of Astarte's big day, [Easter](#). In fact, he won't be angry if we toss Passover, Unleavened Bread, "counting the omer," Shavuot (Pentecost), Day of Trumpets, Day of Atonement, Feast of Tabernacles, and Last Great Day into the dustbin of history. He'll be *like totally cool* with that.

But he'll be really, really mad at a husband for making a rational decision, a humane decision, a decision utterly without malice that builds his house and benefits society.

Turn again to the blessings of Yahweh. [Deuteronomy 7:12-15](#) provides the following:

> 12 "And **because you listen to these rules and keep and do them**, Yahweh your Elohim will keep with you the covenant and the steadfast love that he swore to your fathers. 13 He will love you, bless you, and multiply you. He will also ***bless the fruit of your womb*** and the fruit of your ground, your grain and your wine and your oil, ***the increase of your herds and the young of your flock***, in the land that he swore to your fathers to give you. 14 You shall be blessed above all peoples. *There shall not be male or female barren **among you** or among your livestock.*
> (ESV edited for sacred name and authorized titles)

The words of the Creator have been *made the truth* with respect to cows. American farmers have many herds of fat & happy Black Angus cows, which almost always produce calves, with very little difficulty calving.

Why? Because farmers tend to be rational.

Why don't humans have the same good results? Because we seize on technologies like nasogastric feeding, which came into common usage about 50 years ago. Because we at the same time denounce selective breeding of the human race as unmentionable, even when the average rational couple faced with both the costs and benefits of children, would exert every fiber of their beings to get the best eggs and the best sperm reasonably possible under the circumstances – including on occasion by **cash purchase**. In short, because we so frequently ditch rationality and objectivity, when human reproduction is the subject.

SB8 turns the laws of both man and Elohim on their heads. The scripture quoted above provides money damages to the husband of the woman who lost the embryo or fetus. The *remedy at law* (reasonable money damages only) is adequate.

They say they do this because they love life and want to save lives, but it isn't true. The only reason they can even believe this is because of the amazing power of the human mind, to engage in self-deceit. Their claims are demonstrably fraudulent. The proponents of SB8 are viciously cruel and heartless to the fatherless and genetically inferior, the very people they claim to love.

The real results of the latest iteration of the Volstead Act?[15] According to the American Medical Association, one of the results is several hundred *additional* dead babies,[16] traumatized parents,[17] and needless medical expenses. Apparently the whitest of hearts and the emptiest of heads is not an adequate substitute for medical skill, training, and experience.

Stilley spent 3 months as a jail or prison inmate, November 21, 2022 through February 17, 2023. Tulsa County Jail[18] served about 500-700 calories a day less than that necessary to maintain body weight. Food was sold on commissary, at grossly inflated prices.

Some inmates would work in the kitchen just for the extra food they could get for that meal. What an ingenious way to extort labor! Stilley with his own eyes watched malnourished and destitute inmates pick food, such as half eaten apples, out of the trash. Stilley could reliably find takers for unpalatable lumps of unmixed oatmeal. They would eat that. They would eat virtually anything arguably digestible as food. Inmates without money

---

[15] Victoria Bisset, *Infant death rate spiked in Texas after restrictive abortion law, study finds,* Washington Post, June 25, 2024. From this article Stilley found the following citation.

[16] Gemmill A, Margerison CE, Stuart EA, Bell SO. *Infant Deaths After Texas' 2021 Ban on Abortion in Early Pregnancy. JAMA Pediatr.* Published online June 24, 2024. doi:10.1001/jamapediatrics.2024.0885

[17] One distraught mother watching her baby die is a tragedy. Hundreds of mothers each watching in anguish as her baby dies is a statistic, which in a proper case might be sacrificed on the altar of political expediency.

[18] Formally known as David L. Moss Criminal Justice Center, in Tulsa County, Oklahoma.

(mainly those without a strong and attentive father) would literally get starved into entering false guilty pleas. By reputation, adequate quantities of reasonably good food is served in Oklahoma state prisons. When the only way out of a nightmare is a false guilty plea, most people will eventually succumb.

They had two computers with Microsoft Word – for some 1,100 inmates. Inmates with lawyers had not the slightest access. Virtually nobody had a complete set of their docket and docket items. Organization was viciously attacked. **Due process** was relentlessly attacked.

For much of this country's history, the prevailing view was that a prisoner was a mere "slave of the State," who "not only forfeited his liberty, but all his personal rights except those which the law in its humanity accords him." *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 139 (1977) (Marshall, J., dissenting) (quoting *Ruffin v. Commonwealth*, 62 Va. 790, 796 (1871)) (alterations and internal quotation marks omitted).

Inmates are still slaves, *de facto*. They're no longer "mere" slaves – they have some rights under the law. While in DOJ-FBOP[19] custody, Stilley was ordered to work in the chow hall for 12 cents an hour. His choice was to 1) do the work or 2) face confinement in SHU, loss of "good conduct time," loss

---

[19]     Department of Justice-Federal Bureau of Prisons.

of privileges, etc.

The Holy Writ not less than 3 times forbids harsh treatment of a fellow Hebrew slave. [Leviticus 25:43, 46, and 53](.).

## B. An asymmetric attack on natural rights may require an asymmetric response.

SB8 didn't just spring up overnight. It's been at least 50 years in the making. Little by little the rights of due process and peaceful petition have been whittled away. Legal norms are generally broken down through attacks against despised and marginalized social groups. The new norms were then incrementally expanded to the remainder of society.

One might think that the question of the legality of SB8 was finally decided in an Order Declaring Certain Civil Procedures Unconstitutional and Issuing Declaratory Judgment, *Van Stean v. Tex. Right to Life*, No. D-1-GN-21-004179 (Tex. Dist. Ct. Dec. 9, 2021), *appeal docketed*, No. 03- 21-00650-CV (Tex. Ct. App. Dec. 9, 2021). After all, the Honorable David Peeples devoted 48 pages to annihilating the legal foundations of SB8.

Texas Right to Life and its President John Seago moved to dismiss on grounds that injunctive relief against the two of them does nothing for the plaintiffs in that case, since the rest of the world would still have the right to sue. *[Van Stean](.)* [at page 9, footnote 9](.).

The thinking of the backers of SB8 is plain. They have engineered a

"law" that cannot be challenged in court. Since effective relief is impossible, *nobody even has any right to challenge the "law.*" If Texas Right to Life and Seago were entitled to dismissal, anyone else facing a suit for declaratory or related relief is equally entitled to dismissal, on the same reasoning. How does the federal court venue change that equation?

More than two years later, Kate Cox lost a baby to trisomy 18. Many news articles claim that these babies live only days or weeks at most. This is not universally true. Medical science has an example of a girl who has [lived with trisomy 18 for 26 years](#).[20] She weighs 45 pounds. She'd be a walking compendium of serious medical issues – if she wasn't wheelchair bound. She's beaten the median life expectancy of *four days* by a long shot.

Texas Attorney General Ken Paxton (**BIG BAD KENNY)** sprang to action, declaring that the abortion of Cox's fatally defective fetus would bring "irreparable harm" to the Great State of Texas. ABC News included the following in a [story December 10, 2023](#):[21]

---

[20]     Alshami A, Douedi S, Guida M, Ajam F, Desai D, Zales V, Calderon DM. *Unusual Longevity of Edwards Syndrome: A Case Report.* Genes (Basel). 2020 Dec 7;11(12):1466. doi: 10.3390/genes11121466. PMID: 33297534; PMCID: PMC7762407.

[21]     El-Bawab, Nadine, *Texas Supreme Court temporarily blocks ruling that allowed woman emergency abortion*, ABC News, December 10, 2023, https://abcnews.go.com/US/hearing-underway-texas-woman-court-emergency-abortion/story?id=105455849

Following Cox's win in court, the Texas attorney general warned that the doctors who perform her abortion **could still get sued by private citizens.**

Under Texas' bans, it is a second-degree felony to perform or attempt an abortion, punishable by up to life in prison and a fine of up to $10,000. The law also allows private citizens to sue anyone who "aids or abets" an abortion.

Paxton also threatened to come after the hospitals' licenses. (Emphasis added)

OK, ***BIG BAD KENNY***, you solicited ***BIG BAD OSCAR*** – two years after *Van Stean*. Let's see how you like your volunteer litigator.

### 1.    Due process is powerful when it is universally respected, a pious platitude otherwise.

Stilley was sentenced to 15 years in federal prison plus 3 years of that trick-bag called supervised release, on two counts of tax evasion and one of conspiracy. The government had three theories:

1) The pretrial theory was that Stilley's co-defendant Lindsey Springer worked and thereby earned money. Stilley paid the money over to Springer, at the express directives of his clients. The government set forth this theory in written pleadings not less than 6 times, prior to trial. [Dkt. 701, pg. 24-25](#).

2) The trial theory was that it doesn't matter whether Springer earned the money or received it as a gift or donation. *Id.* If he got the benefit of the money, he owed taxes on it and is a criminal for not filing returns

and paying tax on it.

3) The posttrial theory was that Stilley and Springer stole the money. *Id.* Neither the pretrial theory nor the trial theory allege a crime against Stilley. That's why the government switched to the theft theory – after the District Court's *sua sponte* deadline for any dispositive motion ([Dkt. 290, pg. 2](#)) – which is to say, any motion that might eliminate the need for sentencing.

The claim that Stilley stole money from anyone is totally contradicted by the record. There were only two substantive counts, one involving Eddy Patterson for tax year 2003, (Count 3) and one involving Patrick Turner for tax year 2005 (Count 4). Patterson testified that Stilley simply followed the lawful directives of his clients. [Jeffrey Gallant Bar Complaint pages 10-11](#). Patrick Turner told the same story – in response to questions by the government prosecutors. [Jeffrey Gallant Bar Complaint page 12](#).

The claim that Stilley stole anything, for himself or for anyone else, is a pure unadulterated fraud. Remember, the loss of ***any*** of the 3 counts of conviction means that any further punishment is utterly unlawful. Nobody claims that any of these counts would support more than 5 years imprisonment.

Stilley was sentenced to five years in prison on each count, to run consecutively. He has served that entire sentence plus time on supervision

plus an additional 3 months on revocation. Now he's serving another 33

months of supervision. That puts Stilley under the constant threat of prison,

[in defiance of due process](.)[22]

What process did Stilley seek? Here's an abbreviated rundown:

1) Stilley filed a motion for judgment as a matter of law ([Dkt. 261](.)) and

brief in support. [Dkt. 263](.)  Both were stricken *sua sponte* by judicial

usurper Stephen P. Friot[23] on the specious theory that the *brief* was

too long. [Dkt. 264](.) It wasn't even long enough to require a table of

contents and authorities – until Friot arbitrarily and without notice

construed the ***motion*** as part of the brief, added the pages together,

and struck both documents. This is a novel theory that hasn't been

relied upon before or after the "ruling to get Stilley." No do-overs!

Stilley wasn't allowed to shorten the pleadings and get rulings on his

arguments.

2) Stilley filed a veritable litany of pleadings in his attempt to appeal,

[10th Circuit 10-5057](.), culminating in an order simply declaring that the

---

[22]      Stefan R. Underhill & Grace E. Powell, *Expedient Imprisonment: How Federal Supervised Release Sentences Violate the Constitution*, Vol. 108, Virginia Law Review Online, pg. 108, November 2022, [https://virginialawreview.org/articles/expedient-imprisonment-how-federal-supervised-release-sentences-violate-the-constitution/](.)
[23]      An examination of [the docket](.), especially entries 9-24, shows that the other judges of the Northern District of Oklahoma did not recuse themselves. There was no vacancy that might have *lawfully* occasioned the special appointment of Stephen P. Friot, who is lawfully appointed in the *Western* District of Oklahoma.

Court wouldn't order the DOJ to refrain from interfering with Stilley's use of his own property for the purpose of preparing a competent appeal brief.

3) Lacking so much as even the complete record, Stilley could not prepare and file a competent opening brief for appeal.

4) Stilley joined his co-defendant's appeal brief but requested the right to appeal after the conclusion of administrative remedies and litigation in pursuit of his right to receive and possess the official record, and the wherewithal for a competent appeal brief. 10th Circuit 10-5057, #57.[24]

5) After prison Stilley filed a motion for relief under the First Step Act, citing the fraud practiced against him, denial of appeal, etc. Dkt. 694.[25] He supported the motion with a brief. Dkt. 695. This was denied on grounds that Stilley was effectively challenging this conviction and sentence. Dkt. 700.

6) Stilley filed a petition under 28 USC 2255. Dkt. 701. This was not

---

[24]     The 10th Circuit does not use seriatim numbering beginning from "1" that can be easily used by the ordinary human mind, as does the 7th Circuit. They assign 12-digit numbers. Stilley assigned his own "docket numbers" to aid in the rational discussion of that litigation.

[25]     The links of a timeline, Docket #694-4 were stripped by the CM/ECF software. A version with working links is available here. It doesn't have filemark headers, but the links work.

decided on the merits, but rather was dismissed on grounds that it was time barred. Judge Friot ignored some ten pages outlining the reasons for the delay, falsely alleging that Stilley hadn't raised any such facts and arguments. Dkt. 719, pg. 4.

7) Stilley during the appeal of the dismissal of the 2255 motion and denial of a certificate of appealability sought a recall of the mandate,[26] which was denied in footnote 3 on grounds that the motion wasn't germane to the proceedings.

8) When Stilley's supervision was revoked, he proved that the underlying conviction was laughably false and fraudulent. Judge Friot refused to consider this defense, once again on grounds that it amounted to an attack on the underlying conviction and sentence.

9) Stilley appealed and filed his opening brief. The government in its response brief dodged the issues. Stilley filed a reply brief, and also filed a motion for release pending appeal, both of which annihilated the government's silly arguments. The 10th Circuit panel in its decision *sua sponte* claimed Stilley didn't get a second ruling on his claims that the underlying judgment was obtained illegally and on the

---

[26]     Stilley filed another motion to recall the mandate, in the original criminal appeal, 10th Circuit 10-5057. The government responded. The 10th Circuit denied that motion as well.

basis of false and fraudulent claims.

10)     Stilley petitioned for [rehearing and rehearing *en banc*](), on grounds that the record plainly showed that Judge Friot had in fact renewed his ruling after issuing his decision on the merits. Plus, Stilley proved that the oaths of Oklahoma attorneys require each of them to bring falsehoods to the attention of the Court, so that the falsehood is reformed. See also [Jeffrey Gallant Bar Complaint at 9](). The petition for rehearing and rehearing *en banc* garnered not a solitary vote in support.

11)     Stilley [petitioned for certiorari]() to the US Supreme Court, observing at [page 26]() that while certiorari is discretionary, ethical duties are not. Stilley's [petition was denied](), and nothing was done to discharge the ethical duties.

12)     Stilley made an [ethics complaint]() against the main prosecutor, Charles A. O'Reilly, at the California Bar. At first the bar attorney [claimed that the complaint was time barred](). When Stilley proved this false [in an appeal letter](), the bar attorney claimed that the entire 66 page complaint [1) failed to state a claim, and 2) lacked proof.]() Stilley [appealed](). The matter is currently awaiting a decision on that appeal, at the California Bar.

13)     Stilley filed an Oklahoma Bar Association [complaint against]()

local counsel Jeffrey Gallant, demonstrating that he had violated attorney ethics and his oath of office by sending Stilley back to prison on revocation of supervised release based on known falsehoods. Stephen Sullins, the assigned attorney, sent an evasive and vapid response pretending that this wasn't a meritorious complaint, such that it should investigated or served on Mr. Gallant, with an answer required. When Stilley attempted to email the other 5 lawyers employed by the Oklahoma Bar Association, Office of the General Counsel, he discovered that his email was **blocked**. When their secretary invited him to send the letter to her email address, he discovered that his emails to her were **blocked as well**. Those paid to enforce legal ethics have done their best to stop their ears against the truth. Stilley sent a Freedom of Information Act request to find out why his emails were blocked.

We can safely draw the following conclusions:

1) Stilley never got a trial on the theory of conviction and sentence.

2) Stilley never got his one direct criminal appeal despite repeated efforts.

3) Nobody even thinks that Stilley is actually guilty of the offenses for which he is now being punished.

4) All of Stilley's enemies are confident that they can cheat Stilley out

of due process as many times as necessary. If other words, if they feel the need to send Stilley back to prison, in the most blatant violation of the [Oklahoma Attorney's oath of office](), they're confident that they can do it, and that nobody will be punished for it. They ***own*** all six of the lawyers on staff at the Oklahoma Bar Association, Office of General Counsel lock, stock, and barrel. They ***own*** the California bar disciplinary authorities. Out of a dozen Tenth Circuit judges in regular service, including three who have taken the oath of an Oklahoma attorney, ***not one*** is willing to keep that oath, or insist that anyone else keep it, or keep the oaths they took when they ascended the bench. ***Not one*** of nine US Supreme Court justices will say a peep. ***Not one*** of the US Supreme Court's 37 law clerks will say a peep.[27] No responsible official will have a word to say in defense of due process – *when Oscar Stilley's in the dock.*

---

[27]     In their defense, most likely one (or at most a handful) of the law clerks wrote a memo for the court. Almost 10,000 petitions for certiorari are filed annually. The justices can't possibly read that many briefs, and still fulfill their judicial functions. However, *someone* could have referred the matter to the Oklahoma bar disciplinary authorities for investigation. According to [Stephen Sullins' letter](), that would have been sufficient for an investigation.

### 2. The Texas political class has procured a due process protester.

Stilley has something for them. You want a piece of Oscar? Come and get it! You want *a due process protester*? ***BIG BAD OSCAR***'s on deck, at your service. File your next petition to revoke. ***BIG BAD OSCAR*** will most likely stipulate to the allegations. That's not where he's going to fight. He's going to fight about the fact that the feds trashed out Stilley's due process all the way, in convicting Stilley and sending him to prison on the basis of *known falsehoods* – not once but twice.

Stilley already knows where he'll get locked up. He's going to Tulsa County Jail. Here's some of what he'll be hunger striking against.

1) Denying persons in their custody electronic access to their court records, the ability to print, bind, tab, etc. ***BIG BAD OSCAR*** doesn't want their money or their stuff. He wants the right to bring *the right stuff* into the Tulsa County Jail, AKA David L. Moss Criminal Justice Center. ***BIG BAD OSCAR*** just wants their permission to bring those things necessary for due process into the jail, set them up, and let the inmates work together to use them.

2) Starving out fatherless inmates, by serving 500-700 calories per day less than that which is necessary for an average adult male to maintain body weight.

3) Locking inmates out of their cell in the daytime, refusing to sell first class postage stamps (seriously!) and other dirty tricks designed to cheat inmates out of due process.

4) The US Attorney's office for the Northern District of Oklahoma, Judge Stephen P. Friot, certain persons at the Administrative Office of the Courts, and others have conspired together to steal restitution money paid by criminal defendants. The scheme is described at [pages 3-6 of a 5-16-2024 letter](#) to Clinton J. Johnson, US Attorney for the Northern District of Oklahoma. Mr. Johnson won't respond to the letter. He won't even formally acknowledge receipt.

Other likely detention facilities also offer Stilley opportunities to hunger strike in pursuit of due process. [CoreCivic Cimarron Correctional Facility](#) in Cushing, Oklahoma is just begging for a hunger strike in protest of their pretended educational opportunities,[28] while in reality stomping them out. FCC Yazoo City Camp should know that cheating SHU inmates out of salt is all but guaranteed to draw a hunger strike.

Appellant and his lawyers owe Stilley exactly nothing. We're

---

[28] Effective educational tools are dual-use items. They're good for education, but also for due process. That's why CoreCivic Cimarron stomps out educational opportunity. The correctional racketeers who pay their contract detention fees *want it to be that way.*

adversaries. However, if they want to know how to defend a hunger striker, Stilley's written a book on that subject. Go to Amazon, search for "Oscar Stilley" and pick the book entitled *The Hunger Striker's Guide to Juice Fasting*.[29] You might save someone's life. Some jails do things like [shutting off the drinking water for a hunger striker](#) – for three days.[30]

### 3. The shortcomings of SB8 do not justify throwing the baby out with the bathwater.

Stilley loves his SB8 billy club. Despite all its flaws, he intends to protect, preserve, and utilize whatever *lawful* applications of this law may be found by the district court. However, he has another tool he hopes to deploy. It's the aforementioned book about juice fasting.

The book explains that there are perhaps 4 million to 7 million abortions per year,[31] in the US. That's a wide range, to be sure. The confidence level for any such number is relatively low. Most abortions are *spontaneous* abortions. Many and perhaps most spontaneous abortions aren't reliably detectable by science. Something goes wrong, and an abortion occurs.

---

[29] The book will be available soon after the filing of this brief.

[30] Bowling, Joshua. *An inmate went on a hunger strike. So the jail shut off his tap.* Searchlight New Mexico, June 19, 2024. https://searchlightnm.org/an-inmate-went-on-a-hunger-strike-so-the-jail-shut-off-his-tap/

[31] The bottom of the range is hard to dispute. The top of the range might be higher. The earliest spontaneous abortions are difficult to reliably detect and quantify.

Ask our good friend Gemini,[32] he'll explain.

Less than 1 million abortions are *induced*. The rest are *spontaneous* abortions. Most spontaneous abortions arise from 1) genetic defects in the fertilized egg, or 2) poor condition of the female due to excess weight, poor physical fitness, poor diet, etc., when the pregnancy is attempted. In short, most spontaneous abortions are the product of *negligence*.

Stilley hopes to reduce spontaneous abortions by 25%, by improving human health and fitness in the US. In this way, the total number of abortions could be reduced by perhaps 1 million per year. Perhaps this would satisfy the opponents of induced abortion. After all, the *total elimination* of induced abortions would leave US society with approximately 3 to 6 million spontaneous abortions per year.

Would they not be equally satisfied if spontaneous abortions were reduced by 1 million per year? After all, don't they say that "every life is precious?"

Induced abortions in the US are currently estimated at somewhere between 860,000 and 1,000,000 per year. Reducing spontaneous abortions by 1 million is not an impossible task. It's a reasonable goal. That would be roughly equivalent to the *total elimination* of induced abortion – a goal that is

---

[32]     He used to go by the delightfully masculine name "Bard." Not sure why the lords of Google decided to change the perfect name.

utterly unrealistic, a pipe dream, delusional, and devastating to would-be parents.

Many hurtful things have been said about **BIG BAD OSCAR.** Some have suggested that Texas SB8 did not recruit the very finest advocates for the weak and the fatherless. Hopefully this brief will lay these baseless theories to rest.

Remember the Tiananmen Square photo? A solitary Chinese protester stopped a row of four tanks, during pro-democracy protests in 1989. They could have rolled over him at any moment. They didn't. He *used his body* to make a statement heard round the world. The photographer was about half a mile away. Getting the film out of the country was a very difficult task. We don't know the name of the "tank man." We don't know if he is dead or alive. We don't even know if *he knows* that his act of courage is world famous.

Stilley has spent over 14 years in various forms of custody, all based on lies, frauds, shameless theory-switching, and other unethical conduct. Stilley is thus faced with a decision. Will he "eat, sleep, hate?" Or will he take a page out of Dr. Braid's playbook, and **use his body** to strike a blow for peaceful petition, due process, and equal protection?

Stilley has already been informed that a plan is afoot, to possibly send Stilley back to prison under the most suspicious of circumstances. Stilley was fired from his job at REVAMP, (Remember Every Victim and Missing Person

in US, Inc.) in Fort Smith, Arkansas. When he promptly got another job offer, with identical title, hours, pay, and conditions, US Probation vetoed it on grounds that it would allow Stilley *continued* contact with prison inmates – just like he had at REVAMP. US Probation objects to any direct or indirect contact with *persons in dire need of help getting due process*. It's an attack on due process under the guise of supervision.

Texas SB8 passed 83-64 in the House, 18-12 in the Senate. The promoters of SB8 have the political power to stop the sadistic and psychopathic abuse of inmates, the trashing of due process, etc. If they continue with their arbitrary cruelty, incarceration of the innocent, etc., it's because they **like it that way**.

A solitary human being, Dr. Alan Braid, M.D., openly challenged their latest assault on due process and the rule of law. An eclectic group of three plaintiffs promptly filed suit. At district court, twelve blue chip lawyers[33] demonstrated their commitment to honor and ethics. In the 7th Circuit eight blue chip lawyers[34] have persisted in advocating for due process, equal protection, and peaceful petition *as a matter of fundamental right*.

Judge Friot has already said that he intends to prove to Stilley that his

---

[33]    Twelve is the number that symbolizes government. There were twelve tribes of Israel, Yahshua the Messiah had twelve disciples.
[34]    Eight is the number that symbolizes infinity.

life will be intolerable unless he maintains monitoring software on his computer and phone. [Revocation TR at 120.](#)  Therefore Stilley plans to remove that software from his computer and phone – *under claim of right*.[35]

This is not to say that Stephen P. Friot can't put Stilley back in prison. Stilley presumes that he can. The claim that Stilley didn't preserve his arguments last time was a *laughable* fraud. Since truth means nothing to Stilley's adversaries it can scarcely be denied that they can incarcerate Stilley again.

They just can't lock up Stilley without triggering a *hunger strike in support of due process, equal protection, and peaceful petition*.[36]

## CONCLUSION

For these reasons, this Court should reverse the judgment of the district court and remand for further proceedings.

 Respectfully submitted,

---

[35]     At a time of his own choosing.

[36]     Hunger strikes are for 1st Amendment purposes expressive conduct, indispensable to the "poorly financed causes of little people." *FTC v. Superior Court Trial Lawyers Assn.,* 493 US 411, 450-451 (1990) (Brennan, J., concurring in part and dissenting in part).

By: /s/ Oscar Stilley
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
oscarstilley@gmail.com

## CERTIFICATE OF SERVICE

I, Oscar Stilley, by my signature above as well as the signature set forth below certify that I have this **July 4, 2024** by CM/ECF served all parties entitled to service in this case; furthermore that Stilley also will serve Wolfgang P. Hirczy de Mino, Ph.D., with a filemarked copy via email at wphdmphd@gmail.com, promptly upon receiving an accepted, filemarked version of the document.

By: /s/ Oscar Stilley

## CERTIFICATE OF COMPLIANCE WITH LENGTH LIMITATIONS

I, Oscar Stilley, by virtue of my signature below as well as the two foregoing signatures, certify that I produced this brief in the current version of Word, using 13-point Century Schoolbook font. I have performed a word count, and that the brief in chief herein has 9,842 words, which is less than 14,000 words. This count was obtained by starting with the jurisdictional statement and continuing until just before the words "Respectfully submitted" at the end of the brief.

By: /s/ Oscar Stilley